TOM GRAY, Chief Justice *757 Deon Latroy Rush was convicted of the state jail felony offense of evading arrest or detention with a prior evading conviction. See TEX. PENAL CODE ANN. § 38.04(a), (b)(1)(A) (West 2016). He was sentenced to eight months in jail. Because the evidence is sufficient to support Rush's conviction and because the trial court did not err in refusing to submit Rush's proposed jury instruction, the trial court's judgment is affirmed.
BACKGROUND
Officers Bill Yoder and Alex Tran of the Bryan Police Department were on a night-time foot patrol in a high crime area of Bryan. They noticed a vehicle turning onto a street with no front license plate. As the vehicle was coming to a stop on its own, the officers initiated a traffic stop. Yoder approached the driver's side of the vehicle, identifying the driver as Tim Washington. Tran attempted to make contact with the passenger, later identified as Rush, but as the vehicle came to a stop, Rush got out and began to walk away. Tran tried to stop Rush, but he would not stop. Instead, Rush continued to walk away and talk on his cell phone. After covering 35 to 40 feet, Rush eventually stopped, and Tran convinced Rush to give Tran his identification. After dispatch informed Tran that Rush had an outstanding warrant, Tran attempted to arrest Rush. Rush made some movements to avoid Tran who then wrapped his arms around Rush. The two were eventually brought to the ground by Yoder who had run over to assist Tran.
SUFFICIENCY OF THE EVIDENCE
As charged in this indictment, a person is guilty of state-jail-felony evading arrest if (1) the person, (2) intentionally flees, (3) from a person he knows is a peace officer, (4) attempting lawfully to arrest or detain him, and (5) the person has been previously convicted of evading arrest or detention. See TEX. PENAL CODE ANN. § 38.04(a), (b)(1)(A) (West 2016). In his first issue, Rush contends the evidence is insufficient to support his conviction because the State failed to prove two of these elements: that Rush was lawfully detained and that Rush fled.
The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:
In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia , 443 U.S. 307, 318-19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ; Hooper v. State , 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson , 443 U.S. at 319, 99 S.Ct. 2781. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." Hooper , 214 S.W.3d at 13.
Lucio v. State , 351 S.W.3d 878, 894 (Tex. Crim. App. 2011).
*758 The Court of Criminal Appeals has also explained that our review of "all of the evidence" includes evidence that was properly and improperly admitted. Conner v. State , 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). And if the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. Jackson v. Virginia , 443 U.S. 307, 326, 99 S.Ct. 2781, 61 L.Ed. 2d 560 (1979). Further, direct and circumstantial evidence are treated equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." Hooper v. State , 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Finally, it is well established that the factfinder is entitled to judge the credibility of witnesses and can choose to believe all, some, or none of the testimony presented by the parties. Chambers v. State , 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).
Detention
Rush first contends that the State did not prove that Rush was lawfully detained. The State bears the burden to prove the lawfulness of the attempted detention as an element of the offense. Guillory v. State , 99 S.W.3d 735, 741 (Tex. App.-Houston [1st Dist.] 2003, pet. ref'd). Police officers may stop and detain a person if they have a reasonable suspicion that a traffic violation is in progress or has been committed. Garcia v. State , 827 S.W.2d 937, 944 (Tex. Crim. App. 1992). Thus, a lawful roadside detention begins when a vehicle is pulled over for investigation of a traffic violation. See Arizona v. Johnson , 555 U.S. 323, 333, 129 S.Ct. 781, 788, 172 L.Ed. 2d 694 (2009). Further, a traffic stop of a vehicle communicates to a reasonable passenger that he or she is not free to terminate the encounter with the police and move about at will. Brendlin v. California , 551 U.S. 249, 255, 257, 258, 127 S.Ct. 2400, 168 L.Ed. 2d 132 (2007). This temporary seizure of a driver and any passengers ordinarily continues, and remains reasonable, for the duration of the traffic stop. Arizona v. Johnson , 555 U.S. 323, 333, 129 S.Ct. 781, 788, 172 L.Ed. 2d 694 (2009).
Both officers testified that the vehicle Washington was driving was missing its front license plate, and a traffic stop was initiated because of the missing plate. There is no dispute that no front license plate on a vehicle is a traffic offense, and Rush does not challenge the propriety of the initial traffic stop. Instead, Rush asserts that a detention of a passenger in a vehicle stopped for a traffic violation is not justified. The United States Supreme Court holds otherwise. Thus, as a passenger in the vehicle, Rush was detained as a part of the investigative stop and was not free to move about at will. See Brendlin , 551 U.S. at 255, 127 S.Ct. 2400.
Accordingly, viewing the evidence under the appropriate standards and applicable law, the evidence was sufficient to prove Rush was lawfully detained.
Fleeing
Rush also argues that the evidence was insufficient to support the element of fleeing because the evidence showed he walked toward his residence after he exited Washington's vehicle, stopped as Tran commanded, and was "wrapped up" by Tran and "put on the ground." Further, he asserts that Washington testified Rush did not run from the officers. Essentially, Rush contends "walking" is not "fleeing," and therefore, the evidence is insufficient to support the element of fleeing.
Contrary to Rush's version of the evidence, Tran testified that as soon as Rush *759 saw the officers approaching the vehicle, Rush exited the vehicle and started running or heading in the direction of an apartment complex past where the vehicle had stopped. Tran commanded Rush to stop. But Rush was walking away, talking on his cell phone and refusing to put it down while Tran attempted to explain to Rush why he was being detained. Tran finally got Rush to stop about 40 feet away from the vehicle. Yoder's trial testimony was similar to Tran's testimony. Yoder stated that as soon as the vehicle came to a stop, Rush jumped out and started walking, trying to distance himself from the vehicle. Yoder estimated that where Tran finally contacted Rush was approximately 35 to 45 feet away from the vehicle. Further, Washington testified that although Rush was not actually running away after the vehicle was stopped, he surmised that the officers thought Rush was trying to do so when he got out of the car.
In the context of evading with a motor vehicle, "fleeing" has been held to be "anything less than prompt compliance with an officer's direction to stop." Horne v. State , 228 S.W.3d 442, 446 (Tex. App.-Texarkana 2007, no pet.). "The statute does not require high-speed fleeing, or even effectual fleeing. It requires only an attempt to get away from a known officer of the law. Thus, under the law, fleeing slowly is still fleeing." Mayfield v. State , 219 S.W.3d 538, 541 (Tex. App.-Texarkana 2007, no pet.) (evading with a vehicle). We see no reason to state a different standard for fleeing when the act of fleeing is on foot. Thus, for the purposes of the evading arrest or detention statute, Rush fled when he walked away from a lawful detention and did not stop when commanded until he was about 40 feet away. See also Griego v. State , 345 S.W.3d 742, 754 (Tex. App.-Amarillo 2011, no pet.) (when a person walks toward his residence and fails to comply with an officer's order to stop, he is still fleeing).
Accordingly, viewing the evidence under the appropriate standards and the applicable law, the evidence was sufficient to support the element of fleeing.
In summary, Rush was lawfully detained as a passenger in a vehicle that was stopped for a traffic violation. And because he was detained, exiting the vehicle and attempting to walk away constituted fleeing.[1] For the foregoing reasons, Rush's first issue is overruled.
JURY CHARGE
By his second issue, Rush contends the trial court abused its discretion in failing to submit a proposed instruction to the jury. The instruction, proposed by Rush, read: "The 4th Amendment of the US Constitution prohibits unreasonable searches + seizures by the police." Rush asserts that the proposed instruction should have been included in the court's charge to the jury because "there was evidence that [Rush] was not legally detained at the time he allegedly evaded arrest."
When we review a claim of jury charge error, we engage in a two-step process. First, we determine whether error exists; and then we determine whether sufficient harm resulted from the error to require reversal. Barrios v. State , 283 S.W.3d 348, 350 (Tex. Crim. App. 2009) ; Almanza v. State , 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). We do not reach *760 the harm issue, however, unless we first find error in the charge.
The trial court must provide the jury with "a written charge distinctly setting forth the law applicable to the case." TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007). And because juries are free to consider and evaluate the evidence in whatever way they think it is relevant to the statutory offenses, special, non-statutory instructions, even if they relate to statutory offenses or defenses, generally have no place in the jury charge. See Kirsch v. State , 357 S.W.3d 645, 652 (Tex. Crim. App. 2012).
The instruction requested by Rush was a special, non-statutory instruction. This is especially so in light of trial counsel's specific and emphatic denial that he was requesting an article 38.23 instruction. See TEX. CODE CRIM. PROC. ANN. art. 38.23 (West 2005). Under the charge as given, Rush was able to argue to the jury that the State had not proven he was lawfully detained. Thus, there was no need for the requested non-statutory instruction, and the trial court did not err in refusing to include it as part of the charge to the jury.
Rush's second issue is overruled.
CONCLUSION
Having overruled each issue on appeal, we affirm the trial court's judgment.

After Rush surrendered his identification and Officer Tran learned that Rush had an outstanding warrant, Rush again attempted to walk away until he was subdued by Tran and Yoder. We need not address whether this encounter was a second offense of evading arrest or detention or whether it was the offense of resisting arrest.